SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00240-AB |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **HALIMA FAISEL MOHAMED,** | |
| **Defendant.** | |

The defendant is a founding member of the Young Come Up (YCU) gang and was found in possession of a firearm in a vehicle. This will be the defendant's third conviction for felon in possession of a firearm. The defendant was initially released on pretrial supervision but struggled and had his release revoked. The United States recommends a sentence of 33 months imprisonment with 3 years of supervised release.

/ / / /

/ / / /

**Government's Sentencing Memorandum**                                  **Page 1**

I.      **Facts**

On February 7, 2025, law enforcement in Clackamas County set up a sex trafficking mission. (PSR ¶ 23). Undercover officers set up prostitution dates with suspected prostitutes based on online advertisements. *Id.* A female agreed to meet the undercover officer at a hotel in Wilsonville and officers saw a vehicle drop the female off at the hotel. *Id.* Officers then stopped the vehicle that dropped the female prostitute off. *Id.*

The defendant was in the back passenger seat of the vehicle that was pulled over. (PSR ¶ 24). The defendant was placed under arrest and initially provided a fake name and date of birth to the officers. (PSR ¶¶ 24-25).  The vehicle was searched and officers located two firearms, a 9mm Glock 17 and a .40 caliber Glock 23 with an extended magazine. (PSR ¶ 24). The Glock 23 was located underneath the seat directly in front of the defendant. See photos of the Glock 23 below.



**Government's Sentencing Memorandum**                                          **Page 2**



The defendant was transported to the Milwaukie Police Department and participated in an interview. (PSR ¶ 25). He denied knowledge about the sex trafficking and officers did not locate any evidence to connect the defendant to the sex trafficking investigation. (PSR ¶¶ 25-26).[1] The officers asked the defendant about the two firearms recovered in the vehicle. (PSR ¶ 25). The defendant denied the guns were his, but said, "Well it's Portland, everyone has those, it's common." *Id.* The defendant then admitted that he "touched" one of the firearms and admitted that he liked firearms. *Id.*

The Oregon State Crime Lab connected a DNA comparison on the firearms and found the defendant's DNA was 12.8 quintillion times likely on the Glock 23. (PSR ¶ 29). A ballistics

---

[1] The driver of the vehicle was convicted of Promoting Prostitution in Clackamas County Case Number 25CR07769 and was sentenced to 60 months imprisonment.

**Government's Sentencing Memorandum**                                    **Page 3**

examination connected the Glock 23 to a shooting the same day on February 7, 2025, in Portland. (PSR ¶ 28). A review of footage of the shooting resembled the vehicle the defendant was stopped in. *Id.* While the defendant is connected to the gun used in the Portland shooting, there is insufficient evidence to charge the defendant for the shooting.[2]

## II.    Plea Agreement

On January 8, 2026, the defendant pled guilty to the single charge indictment charging felon in possession of a firearm. (PSR ¶ 1).  As part of the plea agreement, the government agreed to a two-level reduction under 18 U.S.C. § 3553(a) based on the defendant's plea before the second trial date and his then performance on pretrial release. The government agreed to recommend a low-end of the guidelines if the defendant did not violate the terms of his pretrial release. As discussed below, the defendant violated the terms of his pretrial release and the government is not bound by the plea deal.

## III.    Guidelines

| Count 1: 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm | | |
|---|---|---|
| USSG § 2K2.1(a)(4)(B)(ii) | Base Offense Level | 20 |
| USSG § 3E1.1(a), (b) | Acceptance of Responsibility | -3 |
| 18 U.S.C. § 3553(a) | | -2 |
| | **Adjusted Offense Level** | 15 |

/ / / /

/ / / /

/ / / /

---

[2] Video surveillance of the shooting shows an individual believed to be the defendant in a shootout with two unknown individuals. The defendant has a seasonable self-defense claim that he was fired upon first.

**Government's Sentencing Memorandum**                                    **Page 4**

### IV.    Criminal History

| Crime | Conviction Date | Jurisdiction | Sentence | Criminal History Points |
|---|---|---|---|---|
| Unauthorized Use of a Vehicle | 8/15/2017 | Multnomah County | Probation (revoked and 60 days) | +2 |
| Failure to Appear in the First Degree | 10/11/2018 | Multnomah County | Probation | +1 |
| Felon in Possession of a Firearm | 11/1/2019 | Multnomah County | 366 days | +2 |
| Felon in Possession of a Firearm | 11/1/2019 | Multnomah County | 366 days | +2 |

The defendant receives seven criminal history points. (PSR ¶ 52). However, due to the fact the defendant was on supervision, the defendant receives an additional criminal history point pursuant to USSG § 4A1.1(e). (PSR ¶ 53). He has a total of eight criminal history points and is a Criminal History Category IV. (PSR ¶ 54).

### V.    Pretrial Release

The defendant was arraigned and released after his initial appearance on June 23, 2025. (PSR ¶ 15). On July 7, 2025, the defendant tested positive for cocaine and marijuana. *Id.* The defendant discussed his drug use with his pretrial officer and admitted to using marijuana and cocaine while on pretrial release. *Id.*

Pretrial continued to try to work with the defendant, but he missed his drug test on August 25, 2025. (PSR ¶ 16). The defendant contacted pretrial after missing the drug test and scheduled a makeup for the following day. However, on August 27, 2025, pretrial learned that the defendant did not report a previous law enforcement contact from August 3, 2025 when the defendant was caught with a known YCU gang member in a vehicle. (PSR ¶ 17). The defendant

**Government's Sentencing Memorandum**                                    **Page 5**

had a small bindle of cocaine on his person and claimed he was holding it for his girlfriend. Pretrial confronted the defendant about the violations, and he denied using cocaine and said he was getting a ride from his "homeboy" with no other ride options.

The defendant was cited into court and admitted to the violations on August 29, 2025. *Id*. The defendant was allowed to remain out of custody with the added conditions of GPS monitoring and a curfew. *Id.* At first, the additional conditions seemed to work. The defendant appropriately asked for help from pretrial and discussed the need for additional services. His pretrial officer was impressed with his performance and attitude after the additional conditions.

However, the defendant's limited success on pretrial release was short lived. On February 20, 2026, he got into an argument with his girlfriend and was kicked out of his residence. (PSR ¶ 19). Pretrial allowed the defendant to reside at a temporary residence until the following Monday, February 23, 2026. *Id.* The defendant made an extraordinarily stupid decision and showed up to the Northwest Regional Re-entry Center (NWRRC) extremely intoxicated. (PSR ¶ 20). The NWRRC refused to admit him into the halfway house because he provided a breath sample showing a blood alcohol content of a .236 and .224.

On February 25, 2026, the defendant appeared in front of Your Honor. The defendant admitted to the violations of his pretrial release conditions and sought his release. The government sought his continued detention. The Court revoked his pretrial release and held him in custody pending sentencing.

## VI.    Conclusion

The defendant is an admitted founder and member of the Young Come Up (YCU) gang that goes by the street name "Osama." (PSR ¶ 67). YCU is a smaller gang in Portland that is made up of primarily African immigrants.  The defendant himself is a permanent resident that

**Government's Sentencing Memorandum**                                            **Page 6**

immigrated from Kenya when he was three years old. Unfortunately, this gang of immigrants is primarily focused on violence and developed a reputation for shootings where YCU members fire a high volume of gunshots with a low accuracy rate. The defendant is still a central figure for YCU because he was one of the founders. Guns are a central tool for YCU given their proclivity for shootings.  The defendant is no different.  He is now on his third conviction for felon in possession of a firearm despite being only 27 years old.

The defendant initially showed promise on pretrial release. He appropriately discussed his struggles with his pretrial officers, but unfortunately his performance fell off and his release was revoked. He returned to associating with gang members and using drugs. Upon his release, the defendant is at an extreme risk to return to prison or be shot and killed unless the defendant completely divorces himself from gangs, guns and drugs.

If the defendant complied with his pretrial conditions, the government intended to recommend a sentence of thirty-months imprisonment.  Due to the defendant's violation of his pretrial release conditions, the government is recommending a sentence of thirty-three months. In sum, the government's recommendation would be the low-end sentence if the defendant only received a one-level reduction instead of two-levels under 18 U.S.C. § 3553(a) for resolving the case before the second trial setting. He would not receive an additional level reduction for his pretrial performance.

The government's proposed advisory guideline range is 30 months to 41 months, factoring in the recommended departures. While not bound by the Sentencing Guidelines, district courts must consult the guidelines and take them into account when sentencing.  *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005).  The Sentencing Guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence.  *See* 18 U.S.C. §

**Government's Sentencing Memorandum**                                             **Page 7**

3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). The guidelines serve as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, 569 U.S. 530, 531 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

Under the facts of this case, a 33-month sentence, coupled with a 3-year term of supervised release, and a $100 special assessment, satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

Dated: May 6, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Lewis S. Burkhart*
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney